So Ordered.

Dated: September 28, 2021



G. Michael Halfenger
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Michael Lampe and
Sandra Lampe,

Debtors.

Case No. 19-30044-gmh

Chapter 7

**DECISION AND ORDER ON TRUSTEE'S OBJECTIONS TO
DEBTORS' CLAIMS OF HOMESTEAD EXEMPTIONS**

When Michael and Sandra Lampe commenced this case, they were living in Oregon, but they claimed property in Wisconsin as an exempt homestead under state law, as authorized by §522(b)(3) of the Bankruptcy Code. 11 U.S.C. §522(b)(1) & (3)(A) ("[A]n individual debtor may exempt from property of the estate . . . . any property that is exempt under . . . [applicable] State . . . law", subject to inapplicable exceptions.). Because Wisconsin law generally allows an individual to exempt a homestead only if it is "occupied by him or her", Wis. Stat. §815.20(1), the trustee objected.* The Lampes

---

* Chemical Bank also objected. ECF No. 19. It has since expressly opted "to allow the Trustee to carry the laboring oar in prosecuting the objections to the Debtors' residential exemption", indicating in an

responded that they left their Wisconsin home due to circumstances beyond their control, intending to return as soon as they reasonably could, and that under Wisconsin law a homestead exemption is "not . . . impaired by temporary removal with the intention to reoccupy the premises as a homestead". *Id.*

The court held an evidentiary hearing. This decision and order sets forth the court's findings of fact and conclusions of law as required by Federal Rule of Civil Procedure 52 and Federal Rules of Bankruptcy Procedure 7052 and 9014.

I

The parties disagree about who shoulders the burden of proof. The Lampes, relying on Federal Rule of Bankruptcy Procedure 4003(c), contend that the trustee bears the burden to prove they are not entitled to the homestead exemptions, while the trustee, relying on Wisconsin law, including section 815.20(1), contends that the Lampes are not entitled to claim their Wisconsin property as an exempt homestead unless they prove that their absence from that property was "temporary" and "with the intention to reoccupy the premises as a homestead".

Rule 4003(c) imposes on a party in interest who objects to a debtor's claim of exemptions "the burden of proving that the exemptions are not properly claimed." This rule "answers the question in dispute"—i.e., it identifies who has the burden of proof here—so "it governs—[Wisconsin]'s law notwithstanding—unless it exceeds statutory

---

April 20, 2021 statement that it "will not be independently prosecuting objections to any of the Debtor[s'] exemptions." ECF No. 167, at 1. Chemical Bank has therefore waived any right it may have had to prosecute any objections or bases for objecting to the Lampes' claims of homestead or other exemptions that the trustee did not prosecute, including that the Lampes cannot claim *any* exemptions under Wisconsin law because they cannot satisfy the domicile requirements of §522(b)(3)(A). Chemical Bank raised that issue in its initial objection, but the trustee did not raise it in his. Compare ECF No. 19, at 4–5, ¶¶16 & 19, with ECF No. 11, at 1–2. The trustee also did not raise the issue before the evidentiary hearing on his objections, despite a court order requiring him to file "a brief statement . . . with respect to each issue to be disputed at the evidentiary hearing." ECF No. 169, at 2; see ECF No. 182, at 2–3. Nor did the trustee clearly raise the issue during the evidentiary hearing. The trustee did raise the issue in a post-hearing brief, but he did so too late. He therefore forfeited his right to litigate it.

authorization or Congress's rulemaking power." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 398 (2010) (citing *Burlington N. R. Co. v. Woods*, 480 U.S. 1, 5 (1987); *Hanna v. Plumer*, 380 U.S. 460, 463–64 (1965)).

Federal Rules of Bankruptcy Procedure exceed statutory authorization if they "abridge, enlarge, or modify any substantive right." 28 U.S.C. §2075. The substantive rights of litigating parties, the Supreme Court has long held, include the assignment of the burden of proof. *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 199 (2014); *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 20–21 (2000); *Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Greenwich Collieries*, 512 U.S. 267, 271 (1994); *Am. Dredging Co. v. Miller*, 510 U.S. 443, 454 (1994); *Garrett v. Moore-McCormack Co.*, 317 U.S. 239, 249 (1942); *Cities Serv. Oil Co. v. Dunlap*, 308 U.S. 208, 212 (1939).

The Lampes claim homestead exemptions under Wisconsin law. The burden of proof is thus governed by Wisconsin law. See *Law v. Siegel*, 571 U.S. 415, 425 (2014) ("[W]hen a debtor claims a *state-created* exemption, the exemption's scope is determined by state law . . . ."); see *Raleigh*, 530 U.S. at 21 ("[T]he burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to the burden of proof that normally comes with it."); see also *In re Gilman*, 544 B.R. 184, 193–96 (Bankr. C.D. Cal. 2016) (questioning the validity of Rule 4003(c), in light of *Raleigh*, where it is contrary to otherwise applicable state law).

Under Wisconsin law a debtor who claims a homestead exemption but "no longer occupies the premises" bears "the burden . . . to show that she or he intends to return and reoccupy the premises as a homestead." *Moore v. Krueger*, 507 N.W.2d 155, 159 (Wis. Ct. App. 1993) (citing *Jarvais v. Moe*, 38 Wis. 440, 446 (1875)); see also *Anderson v. Anderson Tooling, Inc.*, 961 N.W.2d 911, 920 (Wis. Ct. App. 2021) ("When a debtor ceases to occupy the premises of the claimed homestead, it is the debtor's burden to show that the circumstances qualify for one of the two exceptions to impairment based on the debtor's absence from the homestead."). Rule 4003(c) cannot relieve the Lampes

of this ultimate burden without affording them a burden of proof more favorable than the one that normally comes with their state-law interest in their claimed homestead. Thus, Rule 4003(c) cannot be applied to shift that burden to the trustee without exceeding the statutory rule-making authority.

Some take the view that Rule 4003(c) merely operationalizes 11 U.S.C. §522(l)—relying in part on the advisory committee note to the rule, which describes the rule as "derived from §522(l) of the Code". Fed. R. Bankr. P. 4003(c) advisory committee note; see 9 *Collier on Bankruptcy* ¶4003.04 (16th ed. 2021), LexisNexis ("[T]he rule simply reflects the burden placed on an objector by section 522(l), a federal statute that overrides state law on this issue under the Supremacy Clause."). If that were true, Rule 4003(c) would perhaps be permissibly applied here: "Congress of course may do what it likes with entitlements in bankruptcy", including "establish[ing] particular burdens of proof", as the Code does "in several places". *Raleigh*, 530 U.S. at 21–22 (citing 11 U.S.C. §§362(g), 363(o), 364(d)(2), 547(g) & 1129(d)); see also *Butner v. United States*, 440 U.S. 48, 54 (1979) (discussing "[t]he constitutional authority of Congress to establish 'uniform Laws on the subject of Bankruptcies throughout the United States'" (quoting U.S. Const., art. I, §8, cl. 4)). But neither §522(l) nor any other Code provision establishes a particular burden of proof on objections to claims of exemptions. Cf. *Raleigh*, 530 U.S. at 21–22 (Congress may "alter the burdens of production and persuasion on tax claims", "[b]ut the Code makes no provision for altering the burden on a tax claim, and its silence says that no change was intended."). Section 522(l) requires the debtor to "file a list of property that the debtor claims as exempt" (or failing that, permits "a dependent of the debtor" to file such a list) and provides that "the property claimed as exempt on such list is exempt", "[u]nless a party in interest objects". The only burden this imposes on an objector is the initial burden of objecting. Section 522(l) says nothing about who bears the burden of proof *after* "a party in interest objects". Cf. *id.* at 22 n.2 ("[W]hile Federal Rule of Bankruptcy Procedure 3001(f) provides that a proof of claim . . . is

'prima facie evidence of the validity and amount of the claim,' this rule does not address the burden of proof when a trustee disputes a claim."). Rule 4003(c) alone does that—extending §522(l), at the least, rather than simply reflecting it.

Applying Rule 4003(c) here would enlarge the Lampes' substantive rights under state law. Under Wisconsin law the Lampes' rights as the owners of real property in the state include a statutory right to claim the property as an exempt homestead, subject to limitations on acreage and value. Wis. Stat. §§815.20(1) & 990.01(14); see *Reckner v. Reckner*, 314 N.W.2d 159, 165 (Wis. Ct. App. 1981) ("The homestead exemption can be conceived as having two parts", "a right to protect certain property from sale" and "a right to protect [a certain amount of] the . . . proceeds from the sale of homestead property."). But Wisconsin law conditions that right. Where, as here, a debtor claims as exempt a homestead not "occupied by him or her", the debtor bears the burden of showing that the exemption has not been impaired by the lack of occupancy, e.g., by proving "temporary removal with the intention to reoccupy the premises as a homestead". §815.20(1). Because Wisconsin law treats this burden as an essential condition on the homestead exemption, the burden of proof must remain where Wisconsin law puts it. See *Raleigh*, 530 U.S. at 26 ("[I]n the absence of modification expressed in the Bankruptcy Code the burden of proof on a tax claim in bankruptcy remains where the substantive tax law puts it."); see also *Butner*, 440 U.S. at 54–57 ("the basic federal rule" in bankruptcy cases is that "[p]roperty interests are created and defined by state law", so "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.").

For these reasons the Lampes bear the burden to prove that their homestead exemptions were "not . . . impaired" when they ceased to occupy their Wisconsin property because their "removal" was "temporary" and "with the intention to reoccupy the premises as a homestead". §815.20(1). The Lampes must show that they ceased to

occupy their Wisconsin property "for a fixed and temporary purpose, or for a temporary reason." *Moore v. Smead*, 62 N.W. 426, 429 (Wis. 1895) (citing *Phillips v. Root*, 31 N.W. 712 (Wis. 1887); *Jarvais*, 38 Wis. 440; *Herrick v. Graves*, 16 Wis. 157 (1862)). They must also show that their removal from the property was "made 'with a certain and abiding intention to return to the premises and reside there . . . . A vague intention to return someday is insufficient.'" *Krueger*, 507 N.W.2d at 157–58 (quoting *Schapiro v. Sec. Sav. & Loan Ass'n*, 441 N.W.2d 241, 244 (Wis. Ct. App. 1989)).

II

The record does not clearly reveal when the Lampes ceased to occupy their Wisconsin property. They stipulated that they moved to Oregon in October 2017, ECF No. 166, at 1, ¶6, but they also stipulated that Sandra Lampe applied for an Oregon driver's license more than a year earlier, in August 2016, *id.* at 2, ¶7. She testified that she did that because she understood Oregon law to require her to obtain an Oregon driver's license after she had resided there for 30 days, ECF No. 187, at 22:00–:23, which suggests that she moved to Oregon, thereby removing herself from the Wisconsin property, no later than July 2016. Michael Lampe spent little time at the Wisconsin property between when they bought it in 2003 and when he moved to Oregon in 2017: As Sandra Lampe testified, "He would come for my birthday, which is in August. Sometimes he would come for the Fourth of July. And then for the holidays. . . . Thanksgiving, Christmas." ECF No. 187, at 7:40–8:04. Based on the Lampes' testimony and the stipulated facts, Michael Lampe spent most of that time in the U.S. Virgin Islands, where after operating a charter boat for years, he "served as a broker in various real estate transactions" and was "involved in certain business ventures". ECF No. 166, at 1, ¶2; see ECF No. 187, at 6:50–7:17; ECF No. 188, at 23:12–:45. That is where Michael Lampe testified that he was shortly before a hurricane was expected to hit in October 2017, when he and Sandra Lampe's mother, who was living in Florida at the time, in the expected path of the storm, evacuated to Oregon. ECF No. 188, at 24:40–25:57.

Without knowing *when* the Lampes ceased to occupy their Wisconsin property, it is difficult to determine *why* they did that. They stipulated that the "[r]easons for their moving to Oregon" in October 2017 included "Mrs. Lampe's desire to care for her elderly and ailing mother" and "the difficulty of Mr. Lampe continuing to work in the real estate business in the U.S. Virgin Islands" after "two back-to-back hurricanes"—a second hurricane hit shortly after the one that Michael Lampe fled—"caused severe damage to local real estate." ECF No. 166, at 1–2, ¶¶5–6. But neither of the Lampes was occupying their Wisconsin homestead in October 2017, when they purportedly moved to Oregon—where Sandra Lampe had been residing for more than a year—so the reasons for that move do not explain their initial removal from the homestead.

Based on her testimony, Sandra Lampe appears to have initially removed herself from the Wisconsin property and moved to Oregon in 2016, "hoping to remodel" a house owned there by a family trust to "rent [it] out." ECF No. 187, at 8:35–:54; see also *id.* at 21:20–21:44 ("I was there to fix it up. . . . It needed some updating. . . . And we were planning on renting it out."). None of the stipulated facts concern this supposed remodeling effort, and there was scant relevant testimony about it at the evidentiary hearing. As a result, it is impossible to discern from the record whether Sandra Lampe removed herself from the Wisconsin homestead for a fixed and temporary purpose and with a certain and abiding intention to return to the premises and reside there.

Whatever her original reasons for leaving, Sandra Lampe's later actions suggest only a vague and contingent intention to return to and reoccupy the Wisconsin homestead. Sandra Lampe spent more than a year in Oregon—purportedly to remodel the family trust's house there—before Michael Lampe and her mother joined her there in October 2017, but the stipulated facts and testimony establish little about what she actually did there during that time, other than that she applied for and obtained an Oregon driver's license and registered to vote there. She testified that, after her mother moved to Oregon in October 2017, she planned to stay "through the holidays" and

bring her mother back to her Florida condo "after Christmas" but that it became apparent during that time that her mother could not then take care of herself. *Id.* at 9:24–:50. At that point, Sandra Lampe testified, "If she got better, then the idea was that we would take her back to Florida, and if not, then I would take care of her until I couldn't anymore or until she died." *Id.* at 10:39–:52. Sandra Lampe testified that she "didn't think it was going to be more than a few months, or six months at the most." *Id.* at 11:07–:14. The plan after that was "to return to Wisconsin." *Id.* at 11:18–:35. But the Lampes stipulated that while they lived in Oregon, they rented the Wisconsin property to Sandra Lampe's niece and her niece's husband. ECF No. 166, at 2, ¶14. And as Sandra Lampe testified, her mother was still alive years later, "in an assisted-living place near the [Oregon] house." ECF No. 187, at 12:10–13:15. Only after her mother died, in January 2021, did Sandra Lampe move back to Wisconsin—more than a year after filing this bankruptcy case and claiming the Wisconsin property as her homestead. *Id.*

Based on his testimony, Michael Lampe moved to Oregon in October 2017—again, not from Wisconsin but from the U.S. Virgin Islands, where he was engaged in business until an impending hurricane forced him to evacuate. His initial removal from the Wisconsin property may have been temporary and with the requisite intent, as both Lampes testified that for years he had traveled regularly to the U.S. Virgin Islands for business, always returning (if only briefly) to the Wisconsin homestead.

Yet, Michael Lampe's actions after leaving the Wisconsin homestead, like Sandra Lampe's, demonstrate an insufficiently certain and abiding intention to return and reoccupy the premises. The Lampes stipulated that he too applied for and obtained an Oregon driver's license and that he "held an Oregon real estate broker's license and was employed in Oregon selling real estate" when the Lampes commenced this case. ECF No. 166, at 2, ¶¶8 & 10. When asked at the evidentiary hearing whether he "still ha[s] an active Oregon real estate broker's license", Michael Lampe testified, "That's where I work, yes." ECF No. 188, at 35:24–:30; see *id.* at 36:40–:48 (When asked, "Are you still

working in Oregon?", Michael Lampe testified, "Yes."). He then confirmed that he is a member of a Rotary Club in Oregon and "a director of [his] church" there, noting, "I always join the churches, wherever we're staying." *Id.* at 1:03:19–:42. Although he testified that he was "in and out" of Wisconsin "multiple times" in 2019, he spent "probably less than 60 days" in the state that year and did not explain why he was in the state. *Id.* at 34:25–35:03.

Moreover, despite the Lampes' assertions that they remained in Oregon for years in order to care for Sandra Lampe's mother, Michael Lampe testified consistently and credibly that they could have done the same in Wisconsin. When asked, "Once you were in Oregon with [Sandra Lampe's mother], at any time you could have brought [her] from [Oregon] to [Wisconsin], just as you had brought her from South Florida to Oregon?", Michael Lampe testified, "That's correct", before clarifying that "[t]hose decisions were not made by [him]" but by Sandra Lampe. *Id.* at 55:05–:31. He was then asked, "[Do] you agree . . . that you and your wife could have taken care of your mother-in-law at what you are claiming is your homestead [in Wisconsin]?", and he testified, "Yes, I think we could have done that." *Id.* at 56:08–:26. The Lampes' attorney even tried, in his redirect examination of Michael Lampe, to elicit testimony that the Oregon house was somehow better suited to housing and caring for Sandra Lampe's mother than was the Wisconsin property, but Michael Lampe identified only seemingly minor differences between the two homes. See *id.* at 1:06:29–:08:31.

The Lampes testified that they always intended to return to Wisconsin and that they retained ownership of the Wisconsin house for that purpose, but that testimony was vague and belied by their actions. The greater weight of the stipulated facts and evidence presented demonstrates that the Lampes' intent to return and reoccupy their Wisconsin property as a homestead was, at best, "conditional or indefinite" and that their recent assertions to the contrary are merely "*ex post facto* professions, after intervening occurrences . . . made return advantageous." *Blackburn v. Lake Shore Traffic*

*Co.*, 63 N.W. 289, 291 (Wis. 1895) (quoting *Jarvais*, 38 Wis. at 448); see also *In re Bradshaw*, 125 B.R. 782, 786 (Bankr. E.D. Wis. 1991). Simply put, they only "vaguely contemplated the possibility of returning", which is insufficient to preserve a homestead exemption. *Smead*, 62 N.W. at 430.

### III

For the foregoing reasons, IT IS ORDERED that the trustee's objections to the Lampes' claims of homestead exemptions are sustained. The Lampes impaired their homestead exemptions by their removal from the premises, so their homestead exemptions under Wisconsin law are not properly claimed.

IT IS FURTHER ORDERED that the trustee's request for reconsideration of the court's order during the evidentiary hearing excluding evidence of a settlement offer as inadmissible is denied because, even assuming the admissibility of the evidence, it clearly has so little probative value that any error in excluding it is harmless.

#####